IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EBONY S.[1],<br>    Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br>    Defendant. | Case No. 2:23-cv-1043<br>Watson, J.<br>Litkovitz, M.J.<br><br><br>**REPORT AND<br>RECOMMENDATION** |

Plaintiff Ebony S. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for supplemental security income (SSI). This matter is before the Court on plaintiff's statement of errors (Doc. 8), the Commissioner's response in opposition (Doc. 10), and plaintiff's reply (Doc. 11).

**I. Procedural Background**

Plaintiff previously applied for benefits on April 18, 2018. After her claims were denied initially and upon reconsideration, she filed an appeal, which was heard by ALJ Jeffrey Hartranft, who rendered a final decision on September 11, 2020. (Tr. 61-81). Plaintiff filed a subsequent application for benefits on October 15, 2020, alleging disability beginning September 12, 2020, due to degenerative disc disease, bilateral extremity pain, bilateral extremity tingling and numbness, bilateral shoulder pain, loss of grip in bilateral hands, sciatica, depression, hypothyroidism, bipolar I, and Post Traumatic Stress Disorder (PTSD). (Tr. 207). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment, or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

and was granted a *de novo* hearing before administrative law judge (ALJ) Matthew Winfrey. Plaintiff and a vocational expert (VE) appeared telephonically and testified at the ALJ hearing on April 13, 2022. (Tr. 33-57). On May 4, 2022, the ALJ issued an unfavorable decision. (Tr. 13-32). This decision became the final decision of the Commissioner when the Appeals Council denied review on February 15, 2023. (Tr. 1-5).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920 (b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] has not engaged in substantial gainful activity since October 15, 2020, the application date (20 CFR 416.971 *et seq.*).
>
> 2. [Plaintiff] has the following severe impairments: cervical degenerative disc disease; lumbago with sciatica; cervicalgia; right shoulder degenerative joint disease; status/post fracture of the left knee with surgery; depressive disorder; anxiety disorder; and cannabis use disorder (20 CFR 416.920(c)).
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity [(RFC)] to perform sedentary work as defined in 20 CFR 416.967(a) except no climbing ladders, ropes, or scaffolds; no crawling; no exposure to workplace hazards such as unprotected heights or dangerous, unprotected moving mechanical parts; and no overhead lifting or reaching. Mentally, [plaintiff] is limited to perform simple, routine tasks but not at a production rate pace, such as one has with assembly line work; can tolerate occasional interactions with supervisors and coworkers; no interaction with the public; interactions would be superficial, meaning interactions would be limited to the straightforward exchange of information, without negotiation, persuasion,

conflict resolution, close teamwork, tandem work, or over the shoulder supervision; and can tolerate occasional changes in duties and the work setting.

5. [Plaintiff] is unable to perform any past relevant work (20 CFR 416.965).[2]

6. [Plaintiff] was born [in] … 1978 and was 42 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. [Plaintiff] has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[3]

10. [Plaintiff] has not been under a disability, as defined in the Social Security Act, since October 15, 2020, the date the application was filed (20 CFR 416.920(g)).

(Tr. 16-27).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[2] Plaintiff's past relevant work was as a cashier, a semi-skilled, light exertion position. (Tr. 26, 41, 49-50).
[3] Relying on the VE's testimony, the ALJ found that plaintiff would be able to perform the requirements of representative sedentary, unskilled occupations such as printed circuit board assembly screener (10,000 jobs in the national economy), document preparer (22,000 jobs in the national economy), and addresser (6,800 jobs in the national economy. (Tr. 26-27, 51-52).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

Plaintiff raises a single assignment of error, that the ALJ erred in his evaluation of the medical source opinions by failing to articulate the persuasiveness of the factors as required by 20 C.F.R. § 416.920c. (Doc. 8 at PAGEID 819-27). Plaintiff implicitly makes two arguments in support of this alleged error: (1) because the ALJ found the medical opinions equally unpersuasive even though the opinions are not identical, the ALJ "was required to articulate the persuasiveness of all of the factors in 20 C.F.R. § 416.920c" (Doc. 8 at PAGEID 821); and (2) the

ALJ "failed to articulate the persuasiveness of the supportability factor when evaluating the opinions of NP Ewiah and Dr. Hom." (*Id.*).

In response, the Commissioner argues that the ALJ was required to explain how he considered only the supportability and consistency factors.  (Doc. 10 at PAGEID 836).  The Commissioner further contends that the ALJ properly evaluated the medical opinions of NP Ewiah and Dr. Hom.  (*Id.* at PAGEID 838-42).

E.  Analysis

### 1. The ALJ was not required to articulate how he considered the factors contained in 20 C.F.R. § 416.920c(c)(3)-(5).

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions.  *See* 20 C.F.R. § 416.920c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)).  These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions.[4]  *Id*.  The Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[5], including those from your medical sources." 20 C.F.R. § 416.920c(a).  Rather, the Commissioner will consider "how persuasive" the medical opinion is.  20 C.F.R. § 416.920c(b).[6]

---

[4] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 416.927(c)(2)).

[5] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim."  82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.  For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

[6] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical."

6

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[7] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 416.920c(c)(2). The ALJ is required to "explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 416.920c(b)(2). Conversely, the ALJ "may, but [is] not required to, explain" how he considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 416.920c(b)(3). Finally, the ALJ is not required to articulate how he or she

---

*Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n. 1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). For claims filed on or after March 27, 2017, these regulations are found at 20 C.F.R. §§ 404.1520c and 416.920c. The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations, and vice versa, for purposes of this Report and Recommendation.
[7] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

considered evidence from nonmedical sources.  20 C.F.R. § 416.920c(d).

In this case, plaintiff contends that, because the ALJ "found each of the medical opinions in the record equally 'not persuasive,'" . . . "the ALJ was required to articulate the persuasiveness of all of the factors in 20 C.F.R. § 416.920c." (Doc. 11 at PAGEID 845) (citing 20 C.F.R. § 416.920c(b)(3)).  The Court disagrees.

Section 416.920c(b)(3) provides:

> Equally persuasive medical opinions or prior administrative medical findings about the same issue.  When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

The obligation to articulate how the ALJ considered the factors in paragraphs (c)(3) through (c)(5) arises only when medical opinions are equally well-supported and consistent—not when the ALJ finds them equally unsupported and inconsistent.  *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-cv-366, 2021 WL 4261218, at *10 (M.D. Fla. Sept. 20, 2021) ("Thus, because the ALJ found [the medical opinions] to be equally unsupported and inconsistent, he was under no obligation to address the remaining factors.").  *See Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 497 (S.D. Miss. 2021) ("On its face, the 20 C.F.R. § 404.1520c(b)(3) writing requirement is only triggered when the ALJ himself *makes a finding* that two opinions are 'equally well-supported' but 'not exactly the same.'").  *See also Baker v. Kijakazi*, No. 2:21-cv-03126, 2023 WL 2414011, at *15 (N.D. Tex. March 7, 2023).

As one court has explained:

> No additional articulation requirement is triggered when multiple opinions are *unsupported* and/or *inconsistent*.  *See generally* 20 C.F.R. § 404.1520c(b).  And this makes sense.  When an ALJ concludes that multiple opinions are both

8

> consistent and supported, the duty to build an accurate bridge between the evidence and the result would require the ALJ to provide an additional explanation articulating why the ALJ chose to favor limitations from one of the opinions over conflicting limitations in a different opinion. *See* 20 C.F.R. § 404.1520c(b)(3); *cf. Fleischer [v. Astrue]*, 774 F. Supp. 2d [875] at 877 [(N.D. Ohio 2011)]. But, as in this case, when the ALJ has already explained that the opinion at issue was *unsupported* and/or *inconsistent*, she has also satisfied any obligation to explain why any limitations from that opinion were not incorporated into the ultimate RFC finding.

*Serowski v. Comm'r of Soc. Sec.*, No. 1:19-cv-2761, 2020 WL 6383187, at *12 (N.D. Ohio Oct. 30, 2020).

In this case, the ALJ found plaintiff's abilities more limited than the state agency opinions indicated but not as limited as indicated by plaintiff's own medical sources, Sheilla Ewiah, N.P., and Theresa Hom, D.O. (Tr. 24-25). Thus, the ALJ found all of the opinions "not persuasive." (*Id.*). Because the ALJ found none of the opinions well-supported and consistent with the record, he is not required to articulate how he considered the factors in 20 C.F.R. § 416.920c(c)(3) through (c)(5). Thus, plaintiff's statement of error on this issue should be overruled.

### 2. The ALJ's evaluation of the medical opinions of NP Ewiah and Dr. Hom is supported by substantial evidence.

Pursuant to 20 C.F.R. § 416.920c(b)(2), the ALJ "will explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." While she concedes that the ALJ sufficiently articulated the consistency factor (Doc. 8 at PAGEID 822; Doc. 11 at PAGEID 845[8]), plaintiff contends that "the ALJ failed to articulate the persuasiveness of the supportability factor when evaluating the opinions of NP Ewiah and Dr. Hom." (Doc. 8 at PAGEID 821-27).

---

[8] "In fact, the ALJ only articulated the persuasiveness of the consistency factor when evaluating these treating opinions." (Doc. 11 at PAGEID 845).

9

The supportability factor requires the ALJ to consider the relevance of the "objective medical evidence and supporting explanations" for the opinions of NP Ewiah and Dr. Hom.  20 C.F.R. § 416.920c(c)(1).  A supportable opinion "requires consideration of objective medical evidence like laboratory findings. . . ." *Tammy W. v. Comm'r of Soc. Sec.*, No. 2:22-cv-300, 2022 WL 3643604, at *9 (S.D. Ohio Aug. 24, 2022) (citations omitted) (affirming ALJ's finding that an opinion was unsupported where it lacked narrative explanation or support from corresponding treatment notes).  Moreover, a lack of contemporaneous medical records from an opinion provider is an appropriate supportability consideration.  *See Cremens v. Comm'r of Soc. Sec.*, No. 1:18-cv-995, 2019 WL 3553916, at *11 (N.D. Ohio Aug. 5, 2019) (quoting *Bruza v. Comm'r of Soc. Sec.*, No. 1:07-cv-1027, 2008 WL 3979261, at *6 (W.D. Mich. Aug. 4, 2008) ("The absence of progress notes and other contemporaneous medical records regarding the treatment provided by [a physician] for the period at issue entitles his unadorned opinion to virtually no weight.")).  Indeed, a doctor's opinion may be found unsupported when it lacks any detailed explanation of how or why her own examinations buoyed her opinion.  *See Klapp v. Comm'r of Soc. Sec.*, No. 5:20-cv-2850, 2022 WL 310228, at *20 (N.D. Ohio Feb. 2, 2022) (holding that an opinion was unsupported when it contained only a bare listing of diagnoses and generally referenced associated symptoms) (quoting *Price v. Comm'r of Soc. Sec. Admin.*, 342 F. App'x 172, 176 (6th Cir. 2009) ("Because Dr. Ashbaugh failed to identify objective medical findings to support his opinion regarding Price's impairments, the ALJ did not err in discounting his opinion."), and *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.") (internal quotation marks omitted)).

     *a. Opinion of Sheilla Ewiah, N.P.*

  Plaintiff treated with Sheilla Ewiah, N.P., at Southeast Healthcare beginning in February 2020. (Tr. 292-95). Her initial diagnoses included alcohol and cannabis use disorder, major depressive disorder without psychotic features, major depressive disorder with anxious distress, generalized anxiety disorder, and PTSD. (Tr. 294). During her treatment, NP Ewiah noted that plaintiff appeared oriented with appropriate mood, affect, and behavior. (Tr. 269, 274, 446, 451, 457, 690, 754). Plaintiff had normal memory, attention span and concentration, and insight and judgment. (Tr. 269, 274, 446, 451, 457, 683, 690, 754-55).

  In March 2022, NP Ewiah completed a mental impairment questionnaire in which she opined that plaintiff had marked limitations in understanding, remembering, or applying information; interacting with others; concentration, persistence, or pace; and adapting or managing herself. (Tr. 744). NP Ewiah further stated that plaintiff had only mild limitations in performing activities of daily living but a marked limitation concerning episodes of deterioration or decompensation in work. (*Id.*). NP Ewiah indicated that even in the absence of substance abuse, plaintiff's mental health condition would markedly impair her ability to complete a normal work schedule and activity. (*Id.*). She anticipated that plaintiff's mental health impairments or treatment would cause her to miss work more than three times per month. (Tr. 744).

  Before evaluating the individual medical opinions, the ALJ stated broadly that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence . . . [and] considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c." (Tr. 20). In the opinion evaluation section of the RFC analysis, the ALJ determined

11

that the "marked limitations identified by Ms. Ewiah are not supported by the broader record or consistent with the opinion of the State agency." (Tr. 25). The ALJ then stated:

> In particular, the record includes statements that the claimant's depression was moderate and fairly well controlled and mental status examinations that were largely normal. The claimant reported not taking her medication as prescribed during a period of exacerbation.

(*Id.*).

The ALJ did not specifically identify these particular reasons as underpinning his supportability analysis. Regardless of whether the ALJ used the word "supported," the issue is whether the ALJ provided the Court with an analysis of whether he found the medical opinion supported by objective medical evidence or treatment notes. *See White v. Kijakazi*, No. 3:22-cv-0764, 2023 WL 3440264, at *8 (M.D. Tenn. May 12, 2023) ("The ALJ did not provide the Court with an analysis of how well [the doctor] supported and explained his opinion, so the Court is left to wonder how the ALJ reached the conclusion that the opinion was not supportable."). *See also Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *7-8 (N.D. Ohio June 3, 2021) ("The ALJ's terse reasoning failed to build an accurate and logical bridge between the evidence and his conclusion" where "missing is any discussion on the supportability of [the doctor's] opinion"). While the Sixth Circuit "has not specifically addressed the articulation required for an ALJ to adequately explain her consideration of the supportability and consistency factors," "meaningful judicial review exists—even if the ALJ provided only a cursory or sparse analysis—if the ALJ made sufficient factual findings elsewhere in the decision that support her conclusion." *Booker R. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-cv-170, 2023 WL 4247312, at *4-5 (S.D. Ohio June 29, 2023) (construing supportability analysis from ALJ's comparison of medical opinion with "the physician's own findings and explanations"). The Court concludes the

12

ALJ's decision includes sufficient comparisons between NP Ewiah's opinion and her treatment notes and objective medical evidence for the Court to infer the required supportability evaluation.

The ALJ cites NP Ewiah's treatment notes extensively in crafting his RFC. For example, he cites exclusively to NP Ewiah's treatment notes in stating that plaintiff's "depression was fairly controlled" in June 2021 (Tr. 23, citing Tr. 455); that plaintiff failed to take her medication as prescribed (Tr. 23, citing Tr. 679); and that plaintiff's depression screening revealed moderate depression (Tr. 23, citing Tr. 680). The ALJ cites to the treatment notes of NP Ewiah's colleague at Southeast Healthcare for the fact that, in February 2022, plaintiff "had cooperative behavior, appropriate appearance, clear and coherent stream of thought, congruent affect, anxious mood, fully oriented, adequate insight, and fair judgment." (Tr. 23, citing Tr. 736). In finding NP Ewiah's opinion unpersuasive, the ALJ specifically references the treatment notes indicating that plaintiff's depression was "moderate and fairly well controlled;" that her mental status examinations were "largely normal;" and that she "reported not taking her medications as prescribed during a period of exacerbation." (Tr. 25). Accordingly, substantial evidence supports the ALJ's supportability evaluation of NP Ewiah's opinion, and plaintiff's statement of error on this issue should be overruled.

b. *Opinion of Theresa Hom, D.O.*

In March 2022, Theresa Hom, D.O., reported that she treated plaintiff on a monthly basis and that plaintiff's medical problems include cervicalgia, degenerative disc disease, left knee fracture, right rotator cuff tear from 2018, PTSD, bipolar disorder, and anxiety/depression. (Tr. 745). Dr. Hom opined that plaintiff's pain from cervical disc disease affects her upper extremities, negatively impacting use of the hands for forceful gripping or fine manipulation during the workday. (Tr. 746). She opined that the plaintiff cannot sustain use of upper

extremities for 3-hour periods for manipulative activities; and can lift and carry 10 pounds occasionally and no weight frequently.  To support the lifting limitations, Dr. Hom cited to plaintiff's March 2019 cervical spine multi-level spondylosis, July 2019 lumbar disc disease, and May 2021 left knee fracture.  (Tr. 746).   Dr. Hom found that plaintiff could stand and/or walk for 15 minutes at a time and one hour total in a workday; and sit 30 minutes at a time and less than 4 hours total per workday.  (Tr. 747).  Dr. Hom further opined that plaintiff cannot climb, balance, kneel, or crawl; and can only occasionally stoop.  (Tr. 748).  According to Dr. Hom, plaintiff's feeling, reaching, pushing, and pulling are affected; handling and fingering are not affected; and pain or fatigue would impact her ability to sustain or persist in activities during the workday. (*Id.*).  Dr. Hom anticipated that plaintiff would be absent from work more than 3 times per month and distracted two-thirds of the time during an 8-hour workday.  (Tr. 749).  Dr. Hom stated that plaintiff would have several environmental limitations due to intermittent loss of balance; and she cannot sustain work at any exertional level.  (Tr. 749-50).

    The ALJ found Dr. Hom's opinion "not persuasive as it significantly overstates the claimant's limitations given some of the more normal physical examinations and the claimant's own reports that she wants to get back to jogging/running and to walk an hour at a time and do exercises."  (Tr. 25).  The ALJ further noted plaintiff's noncompliance with pain treatment and referenced pain being controlled with medication.  (*Id.*).

    Plaintiff contends the ALJ failed to provide a sufficient supportability evaluation of Dr. Hom's opinion.  The question, then, is whether the ALJ included sufficient comparisons between Dr. Hom's opinion and her treatment notes and objective medical evidence for the Court to find the required supportability articulation.  The Court concludes that he does.

In finding Dr. Hom's March 2022 opinion unpersuasive, the ALJ specifically cites plaintiff's "more normal physical examinations," plaintiff's own reports that she wants to return to jogging and exercising, plaintiff's pain being controlled with medication, and plaintiff's "notable noncompliance with pain treatment, which suggests the pain may not be as severe as alleged." (Tr. 25). These reasons are taken primarily from Dr. Hom's own treatment notes and medical records. Specifically, the ALJ cited Dr. Hom's March 4, 2022 physical examination of plaintiff that revealed only "normal" findings. (Tr. 22, citing Tr. 760). Dr. Hom's other treatment notes similarly report normal findings on physical examination. (Tr. 497-98, 696, 709, 715, 721-22, 728, 733).

Dr. Anne Sullivan, M.D., the orthopedic surgeon at Wexner Medical Center to whom Dr. Hom referred plaintiff, reported on January 12, 2022, that plaintiff's pain had improved and was controlled with pain medication, and that plaintiff "[w]ants to get back to jogging/running." (Tr. 22, citing Tr. 502). Dr. Sullivan's physical examination revealed no apparent distress on exam, minimal expected swelling, and that while quad atrophy remains, plaintiff ambulated with "no real limp" and exhibited good strength to resisted knee extension. (Tr. 22, citing Tr. 504). The ALJ also noted records indicating plaintiff's pain medication controlled her pain. (Tr. 25, 494, 704, 713). Finally, the ALJ cited Dr. Hom's treatment record of March 4, 2022, noting that plaintiff was there "to have documentations filled out for her disability attorney patient helped define her medical issues." (Tr. 25, quoting Tr. 757). The ALJ reasonably concluded that to the extent Dr. Hom's opinion was based on plaintiff's subjective allegations of her limitations, it was not supported by objective medical evidence and was less persuasive. Indeed, while the ALJ identified treatment notes on which he based his supportability evaluation, plaintiff failed to identify a single objective clinical finding from Dr. Hom's treatment notes or medical records that

15

would support her proposed limitations. Accordingly, substantial evidence supports the ALJ's supportability evaluation of Dr. Hom's opinion, and plaintiff's statement of error on this issue should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's statement of errors (Doc. 8) be **OVERRULED** and the Commissioner's non-disability finding be **AFFIRMED**.

2. Judgment be entered in favor of the Commissioner and this case be closed on the docket of the Court.

Date: 11/9/2023

Karen L. Litkovitz
Chief United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

EBONY S.,                            Case No. 2:23-cv-1043
    Plaintiff,                      Watson, J.
                                     Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).